IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| **DENNIS SPEROW,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 3:12-CV-851-NJR-DGW** |
| | ) | |
| **VIPIN SHAH, DOCTOR PAUL, and** | ) | |
| **LOUIS SHICKER,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## <u>ORDER ADOPTING REPORT AND RECOMMENDATIONS</u>

**ROSENSTENGEL, District Judge:**

This matter comes before the Court on several Report and Recommendations entered by United States Magistrate Judge Donald G. Wilkerson.  Specifically, on December 19, 2013, Magistrate Judge Wilkerson entered a Report and Recommendation (Doc. 83) on three Motions for Temporary Restraining Order (Docs. 65, 68, 69) recommending that each Motion be denied.  Magistrate Judge Wilkerson's Report and Recommendation entered on February 25, 2014 (Doc. 96) recommends that the Motion for Summary Judgment filed by Defendant Dr. Vipin Shah be granted and that this matter be dismissed as to Defendant Shah.  On March 26, 2014, Magistrate Judge Wilkerson entered a third Report and Recommendation (Doc. 103) on Defendant Dr. Dina Paul's Motion for Summary Judgment (Doc. 55), recommending that the Motion for Summary Judgment be granted and that this matter be dismissed as to Defendant Dr.

Paul.   For the reasons set forth below, this Court adopts all three Report and Recommendations in their entirety.

## Background

Plaintiff, Dennis Sperow, an inmate incarcerated at Pinckneyville Correctional Center, brings this action for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1893.   Plaintiff claims that Defendants Shah and Paul, both physicians at Pinckneyville, were deliberately indifferent to his serious medical needs.   More specifically, Plaintiff claims that he suffers from both Hepatitis C and an inguinal hernia, and Defendants failed to treat him despite his request.   Plaintiff believes the hernia was caused by general weakening of his body due to the untreated Hepatitis C.

*Hepatitis C Treatment*

Plaintiff had type 1A Hepatitis C, the most common type, upon his arrival at Pinckneyville in January 2007 (Doc. 56-3, p. 7-22).   On February 27, 2007, one month after his arrival, Plaintiff refused a liver biopsy (*Id.* at 4).   Between his arrival at Pinckneyville and the filing of this suit, Plaintiff's blood was tested on at least nineteen occasions (Doc. 56-3, p. 7-20; Doc. 56-4, p. 1-12).   Dr. Paul first treated Plaintiff on January 5, 2011 (Doc. 56-1, p. 5).   He reported that Plaintiff was not jaundiced, but had elevated liver enzymes and decreased blood platelet levels of 128 thousand – the normal range is 150-450 thousand (*Id.*).   Dr. Paul testified that prior to pharmacological treatment, she needed to evaluate the cause of Plaintiff's low platelet levels (*Id.*). Pharmacological treatment is not provided to patients with unstable medical conditions

or multiple other physical ailments, because the side effects of the medications involved can be life threatening (*Id.*).   Dr. Paul decided that the proper treatment plan was to monitor Plaintiff by rechecking his liver enzymes, conducting other blood work, and providing vaccinations for Hepatitis A and B (*Id.*).   Dr. Paul did not order another liver biopsy because, in her medical opinion, Plaintiff was not a candidate for further treatment (*Id.*).   In July 2011, Dr. Shah examined Plaintiff and, like Dr. Paul, he decided that the appropriate plan was to continue to monitor Plaintiff's liver enzymes and blood work (*Id.* at 6).

During Dr. Paul's next examination on January 11, 2012, Plaintiff complained of weakness, confusion, ear and eye pain, an upper respiratory infection, and nausea (Doc. 56-1, p. 6).   Dr. Paul also found that Plaintiff's liver enzymes were elevated (*Id.*). Due to Plaintiff's various complaints, Dr. Paul again determined that Plaintiff was not a candidate for pharmacological treatment because he would be unlikely to tolerate the treatment or strictly adhere to the treatment regimen required to achieve success (*Id.*).

Plaintiff told Dr. Paul that he needed to see a mental health professional, but that he did not want to see one because they were "quacks" (Doc. 56-1, p. 6).   Because confusion can be related to liver function, Dr. Paul ordered Plaintiff's levels drawn to determine the cause of his confusion (*Id.*).   Dr. Paul found that Plaintiff's ammonia levels were elevated (*Id.*).   Elevated ammonia levels in a patient with presumed cirrhosis and confusion are consistent with Hepatic Encephalopathy (*Id.*).   Dr. Shah treated Plaintiff's condition with the prescription medication Lactulose (*Id.* at 7).

On August 3, 2012, Dr. Paul examined Plaintiff because of his complaints of multiple physical ailments, as well as confusion (*Id*.).  Plaintiff's liver enzymes and ammonia levels were elevated, and he again had low platelet levels (*Id*.).   Again, Dr. Paul determined that Plaintiff was not a candidate for pharmacological treatment (*Id*.). She considered Plaintiff's lack of understanding of his diagnosis and multiple sick call refusals – he refused on eleven occasions between March 2007 and September 2012 – as an indication that he would not comply with a strict treatment regimen (*Id*.).   In Dr. Paul's medical opinion, Plaintiff was not a candidate for pharmacological treatment of his Hepatitis C at any point during her treatment of him, but rather, that his best care was to monitor and provide support for his various other complaints (*Id*.).

*Hernia Treatment*

Plaintiff's hernia developed on February 10, 2009.  He was examined two days later, and it was determined that his hernia spontaneously reduced, without manipulation, when he laid down (Doc. 53-3, p. 2).  On February 26, 2009, Plaintiff refused to be seen by a nurse (*Id*. at 3).

Plaintiff was next seen on April 8, 2009, when he told the nurse he had "no pain at all" from the hernia when he laid down (*Id*.).   Plaintiff received further examination by a physician on April 20, 2009, May 14, 2009, and May 20, 2009; at each examination it was determined that the hernia spontaneously reduced when Plaintiff laid down and that it was easily reducible in the upright position (*Id*. at 5-6).   During an examination on May 20, 2009, Plaintiff was given a low bunk and low gallery permit to help limit walking,

and he was advised to follow up if he experienced any problems reducing the hernia, abdominal pain, or vomiting (*Id*.).

On July 16, 2009, and August 21, 2009, Plaintiff was again examined, and his hernia was deemed easily reducible.   Plaintiff was scheduled for sick call on September 23, 2009, but failed to show up (*Id*. at 9).

Plaintiff was examined by Dr. Jill Wahl on February 2, 2010, where, like previous examinations, it was determined that Plaintiff's hernia was easily reducible (*Id*. at 12-13). Dr. Wahl ordered Plaintiff a slow walk or physically challenged line permit based on his complaint that this hernia prevented him from going to "chow" more than twice a day (*Id*.).   On May 3, 2010, Dr. Wahl again found that Plaintiff's hernia was easily reducible and renewed his low bunk and low gallery permit (*Id*.).   Plaintiff's physically challenged permit was discontinued on October 21, 2010, after Nurse Practitioner Rector found he did not meet the criteria (because his hernia was easily reducible and he could reasonably move with regular line movement) (*Id*. at 15).

Dr. Shah first examined Plaintiff on July 29, 2011, regarding his Hepatitis C. During this examination, Plaintiff was not complaining about his hernia (Doc. 53-1, p. 1). Dr. Shah examined Plaintiff for his hernia again on October 21, 2011, where he noted that the hernia was easily reducible (*Id*. at 2).   Plaintiff had no complaints of abdominal pain during the examination, which indicated to Dr. Shah that the hernia was not causing pain or inflammation (*Id*.).   Dr. Shah did, however, order Ibuprofen as Plaintiff had previously complained of pain (*Id*.).   Dr. Shah also advised Plaintiff that he should have

a Tuss – the equivalent of a hernia belt – but Plaintiff refused (*Id.*).   Plaintiff then refused

sick call on November 8 and 12, 2011.

Dr. Shah examined Plaintiff for complaints of stomach pain and ulcers on

February 10, 2012 (Doc. 53-3, p. 20).   Dr. Shah found that his abdomen was soft and

there was no swelling, and he prescribed Zantac for the stomach pain with instructions

to follow up in three months (*Id.*).   On May 10, 2012, Dr. Shah again examined Plaintiff

regarding complaints of stomach pain, at which time Plaintiff told Dr. Shah that the

Zantac treatment relieved his stomach pain (*Id.*).   Dr. Shah ordered labs, prescribed

Zantac, and advised Plaintiff to follow up as needed (*Id.*).

On June 7, 2012, Dr. Shah examined Plaintiff for complaints of acid reflux and

stomach pain (*Id.* at 22).   Dr. Shah found that Plaintiff had no signs of tenderness,

rebound tenderness (tenderness when pushing on the patient), or guarding (reaction to

being poked in the abdomen) (*Id.*).   These findings indicated to Dr. Shah that there was

no infection, intestinal strangulation, or any swelling related to the hernia (*Id.*).   Dr.

Shah ordered lab work, prescribed Prilosec, and noted that Plaintiff should be

reexamined in one month (*Id.*).   Dr. Shah examined Plaintiff again on October 5, 2012,

after he complained of generalized pain, including joint pain (*Id.*).   Dr. Shah ordered

vitamin B-12 injections for Plaintiff's low B-12 count and ordered Ultram, a prescription

pain killer, for Plaintiff's complaint of generalized pain (*Id.*).

*Procedural Background*

On June 21, 2013, Defendant Dr. Shah filed a Motion for Summary Judgment

(Doc. 52).   Defendant Shah argues that he provided Plaintiff with treatment for his hernia.   On July 1, 2013, for much the same reason as Dr. Shah, Defendant Dr. Paul filed a Motion for Summary Judgment (Doc. 55).   Specifically, Defendant Paul argues that she provided Plaintiff with appropriate treatment for his Hepatitis C.

On September 23, 2013, and October 24, 2013, Plaintiff filed three Motions for Temporary Restraining Order (Docs. 65, 68, and 69).   A hearing on the motions took place before Magistrate Judge Wilkerson on December 17, 2013.   At the hearing, Plaintiff complained that he was removed from the line for physically challenged inmates and placed into the walking line for able-bodied inmates by Correctional Officer Huff, who is not a party to this action.   As a result of removal, Plaintiff contends that he suffered stress, his heart rate to accelerated, and he became dizzy.

On March 31, 2014, Plaintiff filed a Response (Doc. 107) to Magistrate Judge Wilkerson's Report and Recommendation (Doc. 96) on Defendant Shah's Motion for Summary Judgment (Doc. 52).   Plaintiff's primary contention is that Defendant Shah's chosen course of hernia treatment was inadequate, such that it rose to the level of constitutional infringement.   Likewise, Plaintiff's July 2, 2014 Response (Doc. 119) to Magistrate Judge Wilkerson's Report and Recommendation (Doc. 103) on Defendant Paul's Motion for Summary Judgment alleges that her treatment of his Hepatitis C was constitutionally deficient.   Plaintiff also filed a Supplement on May 13, 2014 (Doc. 114), alleging that Doctor Shah proscribed him Elavil, which is contraindicated for patients with Hepatitis.

Magistrate Judge Wilkerson's Report and Recommendations (Docs. 83, 96, and 103) all accurately state the nature of the evidence presented by both sides, as well as the applicable law.   Each Report and Recommendation, along with Responses, if any, has been duly considered.

## Conclusions of Report and Recommendations

### Report and Recommendation (Doc. 83) on Motions for Temporary Restraining Order (Docs. 65, 68, & 69)

In the Report and Recommendation, Magistrate Judge Wilkerson recommends that all three of Plaintiff's Motions for Temporary Restraining Order (Docs. 65, 68, and 69) be denied.   The parties were informed that their deadline for objecting to Magistrate Judge Wilkerson's Report and Recommendation was January 31, 2014—a date that has come and gone.   Because no party has filed an objection, the undersigned need not undertake *de novo* review. 28 U.S.C. § 636(b)(1)(C) ("A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations *to which objection is made*.") (emphasis added). *See also Thomas v. Arn*, 474 U.S. 140 (1985); *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 741 (7th Cir. 1999); *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538 (7th Cir. 1986).

The undersigned accordingly **ADOPTS** in its entirety Magistrate Judge Wilkerson's Report & Recommendation (Doc. 83) and rules as follows:   Plaintiff's Motions for Temporary Restraining Order (Docs. 65, 68, and 69) are **DENIED**.

<u>Report and Recommendations (Doc. 96 and 103) on Motions for Summary Judgment</u>
<u>(Docs. 52 and 55)</u>

Based upon the evidence before the Court, Magistrate Judge Wilkerson found that Defendants Shah and Paul were entitled to Judgment as a matter of law. Magistrate Judge Wilkerson outlined that Plaintiff failed to show that either Defendant acted without exercising medical judgment. More specifically, Magistrate Judge Wilkerson found that Plaintiff failed to show that Defendants' responses to his medical needs – a hernia and Hepatitis - were so plainly inappropriate as to permit the inference that they intentionally or recklessly disregarded his needs. As a result, no constitutional violation was found, and Defendants Shah and Paul were entitled to qualified immunity.

*Discussion*

Where timely objections are filed, this Court must undertake a *de novo* review of the Report and Recommendation. 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b); SDIL-LR 73.1(b); *Harper v. City of Chicago Heights*, 824 F. Supp. 786, 788 (N.D. Ill. 1993); *see also Govas v. Chalmers*, 965 F.2d 298, 301 (7th Cir. 1992). The Court may accept, reject, or modify the magistrate judges recommended decision. *Harper*, 824, F. Supp. at 788. In making this determination, the Court must first look at all of the evidence contained in the record and give "fresh consideration to those issues to which specific objections have been made." *Id.*, *quoting* 12 Charles Alan Wright *et al.*, *Federal Practice and Procedure* § 3076.8, at p. 55 (1st Ed. 1973) (1992 Pocket Part). However, where neither timely nor

specific objections to the Report and Recommendation are made, pursuant to 28 U.S.C. § 636(b), this Court need not conduct a *de novo* review of the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).

Here, Plaintiff has filed objections to the Report and Recommendations.[1]   In his objections, Plaintiff only reiterates his position that Defendants Shah and Paul chose inappropriate treatment methods regarding his hernia and Hepatitis, respectively. Specifically, Plaintiff challenges the issuance of a truss and the particular prescription medications prescribed in light of corrective surgery on his hernia, and the denial of certain pharmacological treatments for his Hepatitis.

However, it is not enough for a prisoner to show negligence, or even gross negligence or recklessness, as those terms are used in tort cases.   *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985).   Prisoners must show *deliberate indifference* to serious medical needs.   *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).   "Deliberate indifference is not medical malpractice; the Eighth Amendment does not codify common law torts." *Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).   Indeed, a prisoner is entitled only to reasonable measures to meet a substantial risk of serious harm – not to demand specific care or to receive the best care possible.   *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

---

[1]  The deadline for responding to Magistrate Judge Wilkerson's February 25, 2014 Report and Recommendation (Doc. 96) was March 14, 2014.   Plaintiff filed a Motion for Extension of Time to File Response (Doc. 102) on March 12, 2014, and filed a Response on March 31, 2014, though his Motion for Extension of Time was never granted.   Magistrate Judge Wilkerson's March 26, 2014 Report and Recommendation (Doc. 103) set Plaintiff's deadline for response for April 14, 2014.   Similarly, Plaintiff filed a Motion for Extension of Time to Respond (Doc. 111) on April 7, 2014, and filed a Response on July 2, 2014, though his Motion for Extension of Time to Respond was never granted. The Court has considered Plaintiff's responses even though they were filed out of time.

Here, the record is rife with examples of both Defendant Shah's and Paul's treatment of Plaintiff's hernia and Hepatitis.   Defendant Shah evaluated Plaintiff's hernia, finding it easily reducible, on numerous occasions.   He also prescribed various medications for treatment of pain, including Zantac, Prilosec, and Ultram. Additionally, he ordered a truss, which Plaintiff refused.   Defendant Paul evaluated Plaintiff for the pharmacological treatment he seeks, though in her medical opinion he was not a candidate due to his physical and mental health issues.   Moreover, she evaluated and continued to monitor Plaintiff for eligibility.

Overall, the Court finds the factual findings and rationale of the Report and Recommendations (Docs. 96 and 103) sound.   It is well established that an inmate is entitled to reasonable care, not to demand the specific care of his choice.   *Forbes*, 112 F.3d at 267.   Here, it is apparent that both Defendants Shah and Paul provided reasonable care for Plaintiff's hernia and Hepatitis.

Additionally, Defendant Louis Shicker, in his capacity as Medical Director for the Illinois Department of Corrections, is a party to this action because Plaintiff sought injunctive relief in the form of a particular medical treatment.    Under those circumstances, Defendant Shicker could be a necessary party.   However, because the above discussed treatment has been found reasonable, and all pending Motions for Temporary Restraining Order denied, Defendant Shicker is no longer a potentially necessary party and will be dismissed from this action.

For these reasons, the Court **ADOPTS** Magistrate Judge Wilkerson's Report and

Recommendations (Docs. 96 and 103).  Defendants' Motions for Summary Judgment

(Docs 52 and 55) are **GRANTED**, and this action is **DISMISSED with prejudice**.  The

Clerk of Court is hereby **DIRECTED** to enter judgment accordingly.

       **IT IS SO ORDERED.**

       **DATED:   September 8, 2014**

<u>**s/ *Nancy J. Rosenstengel***</u>
**NANCY J. ROSENSTENGEL**
**United States District Judge**